REDACTED

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| ROLEX WATCH U.S.A., INC.<br><br>                Plaintiff,<br><br>   v.<br><br>PRL USA HOLDINGS, INC.<br><br>                Defendant. | **CIVIL ACTION**<br><br>**NO. 1:12-CV-6006-TPG** |

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S
MOTIONS TO DISMISS AND FOR SUMMARY JUDGMENT AND IN SUPPORT
OF DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT
ON COUNT II OF THE AMENDED COMPLAINT**

REDACTED

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................. 1

STATEMENT OF FACTS ................................................................................. 3

ARGUMENT ........................................................................................... 6

    I.    RL IS ENTITLED TO SUMMARY JUDGMENT ON ROLEX'S CLAIM
        THAT RL LACKED A BONA FIDE INTENT TO USE THE MARKS IN
        2006........................................................................................ 6

        A.    RL Has Produced Documents Contemporaneous with the Filing of
               its Trademark Applications Evidencing Its Bona Fide Intent to Use
               the Marks ........................................................................... 7

        B.    The Entirety of the Circumstances Clearly Demonstrate that RL
               Had a Bona Fide Intent to Use the Marks at the Time the
               Applications Were Filed ........................................................ 8

        C.    Rolex's Reliance on the *Young* Decision is Misplaced ........................... 10

        D.    RL's Current Use and Plans to Use the Marks are Not Relevant to
               RL's Intent at the Time the Applications Were Filed ............................. 11

        E.    The Court Should Grant Summary Judgment to RL on Rolex's
               Claim that RL Lacked A Bona Fide Intent To Use The Marks In
               2006.............................................................................. 12

    II.    THE COURT SHOULD DENY ROLEX'S MOTION TO DISMISS RL'S
        COUNTERCLAIM FOR DECLARATORY JUDGMENT OF NON-
        INFRINGEMENT ...................................................................... 12

        A.    A Substantial Controversy of Sufficient Immediacy Exists
               Between RL and Rolex ......................................................... 13

        B.    RL Is Not Required To Commence Use of the Marks Prior to
               Obtaining A Declaratory Judgment ........................................... 15

        C.    Rolex Will Sue RL for Infringement Upon RL's Sale of Watches
               Bearing the Marks at Issue .................................................... 18

        D.    The Court Should Deny Rolex's Motion to Dismiss RL's
               Counterclaim for Declaratory Judgment ..................................... 19

REDACTED

## TABLE OF AUTHORITIES

**Federal Cases**

*AARP v. 200 Kelsey Associates, LLC,*
2009 U.S. Dist. LEXIS 969 (S.D.N.Y. Jan 6, 2009)....................................................11, 14, 15

*Aktieselskabet AF 21 November 2001 v. Fame Jeans, Inc.,*
525 F.3d 8 (D.C.Cir.2008) ...................................................................................................6

*In re Casino de Monaco Trademark Litigation,*
2010 U.S. Dist. LEXIS 33950 (S.D.N.Y. March 31, 2010) ....................................................17

*Certain Underwriters at Lloyd's, London v. St. Joe Minerals Corp.,*
90 F.3d 671 (2d Cir. 1996)....................................................................................................12

*Continental Cas. Co. v. Coastal Sav. Bank,*
977 F.2d 734 (2d Cir. 1992)..................................................................................................12

*MedImmune, Inc. v. Genentech, Inc.,*
549 U.S. 118 (2007)..................................................................................................11, 15, 18

*Menashe v. V Secret Catalogue Inc.,*
75 U.S. P.Q. 2d 1577 (S.D.N.Y. 2005)...........................................................................16, 17

*Micron Technology, Inc. v. Mosaid Technologies, Inc.,*
518 F.3d 897 (Fed. Cir. 2008)...............................................................................................18

*PRL USA Holdings, Inc. v. Young,*
Opp. No. 91206799, 2013 TTAB LEXIS 551 (T.T.A.B. Oct. 16, 2013) .................................9

*Research In Motion Limited v. NBOR Corporation,*
92 U.S.P.Q. 2d 1926 (T.T.A.B. 2009) ................................................................................6, 9

*Russian Standard Vodka (USA), Inc. v. Allied Domecq Spirits & Wine USA, Inc.,*
523 F. Supp. 2d 376 (S.D.N.Y. 2007)...............................................................................12, 16

*The Saul Zaentz Company dba Tolkien Enterprises v. Joseph M. Bumb,*
92 U.S.P.Q. 2d 1926 (T.T.A.B. 2010) ...................................................................................6

*Starter Corp. v. Converse, Inc.,*
84 F.3d 592 (2d Cir. 1996)...............................................................................................12, 13

*Swatch AG (Swatch SA)(Swatch Ltd.) v. M.Z. Berger & Co., Inc.,*
2013 TTAB LEXIS 515, 108 U.S.P.Q. 2d (BNA) (T.T.A.B. September 30, 2013) ...................................................................................................................................10

*Venugopal v. Sharadha Terry Products, Ltd.,*
2009 U.S. Dist. LEXIS 43534 (W.D.N.Y. May 18, 2009)....................................12, 16, 17, 18

*WarnerVision Entertainment Inc. v. Empire of Carolina, Inc.,*
101 F.3d 259 (2d Cir. 1996)..................................................................................................16

ii

**REDACTED**

## PRELIMINARY STATEMENT

The merits of this case concern the trademarks RALPH LAUREN RLX and RLX RALPH LAUREN, which combine the famous RALPH LAUREN trademark with a well-established, sixteen-year-old apparel brand, RLX.  The mark RLX stands for "Ralph Lauren Extreme" and identifies Ralph Lauren's sporty, durable "performance" apparel and accessories.  The marks are owned by Defendant PRL USA Holdings, Inc., a wholly-owned subsidiary of Ralph Lauren Corporation (collectively "RL").

Following a six-year contested opposition proceeding at the Trademark Trial and Appeal Board ("TTAB") of the US Patent and Trademark Office, the TTAB in June 2012 found no likelihood of confusion between the RALPH LAUREN RLX and RLX RALPH LAUREN marks and the mark ROLEX.

Rolex originally brought this action solely as an appeal seeking a reversal of the TTAB's decision.  In an attempt to short-circuit a decision on the merits of its appeal, Rolex amended its Complaint in January 2014 to focus on a misguided attempt to invalidate the RALPH LAUREN RLX and RLX RALPH LAUREN trademark applications on the grounds that, at the time the applications were filed in 2006, RL lacked the minimum requisite "bona fide intent" to use its marks. In making this claim, Rolex has materially misrepresented the facts to "shoehorn" them into its dubious theory.

Even a cursory examination of the facts makes clear that Rolex's new claim is without merit.  As described in more detail below – and contrary to the misleading assertions set forth in Rolex's motion papers – RL has in fact produced documents showing that, contemporaneously with the filing of its applications in 2006, RL had already: (i) ███████████████████ ████████████████████████████████████████ and (ii) sold and advertised watches

REDACTED

identified by the RLX trademark on RL's ecommerce website in close proximity to the mark RALPH LAUREN; (iii) sold a wide array of apparel and accessories under the RLX RALPH LAUREN and RALPH LAUREN RLX trademarks; and (iv) ████████████████████

████ ██ ████ ███ ████ ████ ████ ████ ████████ ███████ ██

██████████████████████████████████████████████████████████

█████████████████████████████ .

Rolex's "lack of bona fide intent claim" is predicated on a willful disregard for all of the foregoing documented facts.  Based on the undisputed facts evidencing RL's intent to use the marks at the time it filed its trademark applications, RL respectfully requests that the Court deny Rolex's Motion for summary judgment and grant RL summary judgment on Count II of Rolex's Amended Complaint.

Rolex has also moved to dismiss RL's counterclaim for declaratory judgment of non-infringement.  Rolex asserts that RL is seeking an "advisory opinion" that is "based on hypothetical facts;" however, Rolex misstates the standard for determining the existence of a case or controversy in connection with intent-to-use trademark applications. Despite a number of rulings by this Court to the contrary, Rolex suggests that nothing short of RL's manufacture and/or sale of products bearing the marks at issue would create a "case or controversy" under the Declaratory Judgment Act.  As set forth below, RL can readily expand its growing collection of watches already on the market to include RLX RALPH LAUREN and RALPH LAUREN RLX.

Finally, Rolex has clearly indicated that, in the event that the Court does not grant RL's request for declaratory judgment, Rolex will bring **another** action against RL alleging infringement as soon as RL launches RLX RALPH LAUREN and RALPH LAUREN RLX watches.  Rolex should not be granted a third "bite at the apple."  The interests of judicial economy

REDACTED

and commercial certainty would best be served by deciding RL's declaratory judgment counterclaim now.

## STATEMENT OF FACTS

RL is a leader in the design, marketing and distribution of premium lifestyle products, including a full range of men's, women's and children's fashions, footwear, jewelry, luxury watches, handbags, fragrances, and consumer goods offered under the RALPH LAUREN house mark. *See* Local Rule 56.1 Statement of Undisputed Facts ("Undisputed Facts") at ¶ 41. Applicant has at least 63 registrations for the mark RALPH LAUREN for various clothing and accessory items. *Id.* at ¶ 42. RL is a "design-led" company. *Id.* at ¶ 43. Once RL's leadership authorizes final product designs and marketing plans for a new product, RL has the business, manufacturing, distribution, and marketing infrastructure, as well as the financial resources and experience needed to rapidly make and commercialize the product. *Id.* at ¶ 43 *see also*, Declaration of Anna Dalla Val, dated September 22, 2014, submitted in support of RL's Cross-Motion for Summary Judgment ("Dalla Val Decl.") at ¶ 3.

In addition to its famous RALPH LAUREN trademark, RL uses the mark "RLX" on a line of clothing that is comprised of clothing, hats, shoes and sunglasses and is directed to outdoor activities, sports, and athletics. RL has sold RLX-branded clothing since 1998 and owns an incontestable U.S. trademark registration for the mark RLX for clothing. Undisputed Facts at ¶ 5. RL has continuously used in commerce the mark RALPH LAUREN RLX on clothing and accessories since 2004. *Id.* at ¶ 45.

████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████

REDACTED

███████████████████████████████████████████████

██████████████████████████████████████████ RL sold the RLX Suunto Watch

between 2004 and 2007.  *Id.* at ¶ 48.  The RLX Suunto Watch bore the RLX trademark and was

offered for sale on RL's e-commerce website:



RLX Suunto Watch Available for Sale on the RL Website          Photo of RLX Suunto Watch

*See* Undisputed Facts at ¶ 17, 46-48; Dalla Val Decl. Exs. G-H.

In December 2004, ██████████████████████████████████████████

RL filed a trademark application for the RLX mark in connection with watches and jewelry.

Undisputed Facts at ¶ 6.  In January 2006, after RL's RLX trademark application had been

published for opposition, Rolex notified RL of its intent to oppose the RLX application. *Id.* at ¶ 7.

Later in January 2006, RL filed its RALPH LAUREN RLX and RLX RALPH LAUREN

trademark application for watches and jewelry on an "intent-to-use" basis. *Id.* at ¶ 8.  Rolex filed

proceedings before the TTAB opposing registration of the RLX, RALPH LAUREN RLX, and

RLX RALPH LAUREN trademarks. *Id.* at ¶ 11.

**REDACTED**

In January 2007, ██████████████████████████ RL and Richemont

entered into a joint venture called Ralph Lauren Watch and Jewelry Company, S.A.R.L. (the "Joint

Venture") which was formed to design, develop, manufacture and distribute luxury watches and

fine jewelry under RL's family of trademarks. *Id.* at ¶¶ 32, 49.  In connection with the Joint

Venture, Richemont and the Joint Venture executed a Membership Agreement, dated January 26,

2007 (the "JV Agreement").  *Id.*; Dalla Val Decl. Ex. I.

REDACTED

On June 7, 2012, following a six year proceeding, the TTAB ultimately dismissed Rolex's opposition to RL's RALPH LAUREN RLX and RLX RALPH LAUREN trademarks finding that "there is no likelihood of confusion between (RL's) marks RALPH LAUREN RLX and RLX RALPH LAUREN and (Rolex's) ROLEX marks."  Rolex then brought this action seeking to reverse the TTAB's decision. Undisputed Facts at ¶ 56.

ARGUMENT

I.      **RL IS ENTITLED TO SUMMARY JUDGMENT ON ROLEX'S CLAIM THAT RL LACKED A BONA FIDE INTENT TO USE THE MARKS IN 2006**

"A determination of whether an applicant has a bona fide intention to use the mark in commerce is an objective determination based on all the circumstances." *Research In Motion Limited v. NBOR Corporation*, 92 U.S.P.Q. 2d. 1926 (T.T.A.B. 2009).  Rolex has the initial burden of demonstrating by "a preponderance of the evidence that applicant lacked a bona fide intent to use the mark on the identified goods." *See The Saul Zaentz Company dba Tolkien Enterprises v. Joseph M. Bumb,* 2010 WL 2191890 (T.T.A.B. 2010).  "Congress made clear that a 'bona fide intent to use' also involves an objective standard by specifying there must be 'circumstances showing ... good faith.'" *Aktieselskabet AF 21 November 2001 v. Fame Jeans, Inc.,* 525 F.3d 8, 21 (D.C. Cir. 2008).  Here, unlike the facts in any of the cases cited by Rolex -- none of which are

6

REDACTED

from this Court or any court within the Second Circuit-- the undisputed facts demonstrate clearly RL's bona fide intent to use the marks at issue when it filed its trademark applications in 2006.

### A. RL Has Produced Documents Contemporaneous with the Filing of its Trademark Applications Evidencing Its Bona Fide Intent to Use the Marks

Rolex preposterously alleges that RL "has no documents showing any intent to use the marks at issue before its applications were filed in January of 2006." Rolex's Memorandum in Support of Plaintiff's Motions to Dismiss and for Summary Judgment ("Rolex Brief") at 15. This statement is demonstrably false and misleading.   RL has produced ███████████████████ ████████████████████████████████████████████ ██████████████████████████████████████, as well as product catalogs depicting a wide variety of products offered for sale under the RALPH LAUREN RLX and RLX RALPH LAUREN trademarks. *See* Undisputed Facts at ¶ 30; Dalla Val Decl. Exs. A-F. RL also produced a website printout from October 2006 showing the RLX Suunto Watch for sale on RL's ecommerce website. *See* Undisputed Facts at ¶ 30; Dalla Val Decl. Ex. H.  The  RLX Suunto Watch was on sale for approximately two years prior to the January 23, 2006 filing date of the applications to register the RALPH LAUREN RLX and RLX RALPH LAUREN trademarks and for about another year after the filing date. Undisputed Fact at ¶ 48.

Notably, although the parties litigated before the TTAB for six years regarding the RALPH LAUREN RLX and RLX RALPH LAUREN marks -- from 2006 until 2012 -- Rolex never raised any claim regarding RL's bona fide intent to use the marks. Rolex first raised its "lack of bona fide intent" claim in its Amended Complaint in this Action, filed in January 2014.  Many more documents of the type now sought by Rolex would likely have been available closer in time to January 2006, rather than eight years later.

REDACTED

Rolex's new contentions appear to be premised on a metaphysical standard of Rolex's own invention.  Documents showing a bona fide intent to use a mark need not be the equivalent of an actual "use specimen" that would be submitted to the Trademark Office at the conclusion of the registration process.[1]  In fact, none of the decisions cited by Rolex include any analysis of the sufficiency of types of documents produced to show bona fide intent. Instead, those cases deal with trademark applicants who do not have **any documents of any kind** evidencing such intent.   In stark contrast, RL has produced hundreds of pages of contemporaneous documents that evidence that it had a bona fide intent to use the marks at the time it filed the applications.

### B.  The Entirety of the Circumstances Clearly Demonstrate that RL Had a Bona Fide Intent to Use the Marks at the Time the Applications Were Filed

It is preposterous for Rolex to argue that RL lacked a bona fide intent to use the marks, **because at the time it filed its applications, RL was already selling a watch identified by its RLX trademark**. *See* Undisputed Facts at ¶¶ 46-48; Dalla Val Decl. Exs. G, H.

As early as 2004, RL began marketing, distributing and selling the RLX Suunto Watch bearing the RLX trademark.  Undisputed Facts at ¶ 46.  While the RLX trademark differs from the RLX RALPH LAUREN and RALPH LAUREN RLX trademarks at issue, RL's sale of the RLX Suunto Watch evidences its intent to sell watches to customers familiar with RL's line of RLX of apparel and accessories.   RL has long used both the RLX RALPH LAUREN and RALPH LAUREN RLX trademarks for apparel.

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

---

[1] It should come as no surprise that RL has not produced documents that are "use specimens" in connection with its **intent-to-use** trademarks.  This is especially true given that the placement and application of the RL trademarks to physical products is often the last aspect of RL's design process.

8

REDACTED

████████████████████████████████████████   ████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████

Prior to filing the applications at issue, RL had marketed and sold apparel products under its RLX, RLX RALPH LAUREN, and RALPH LAUREN RLX trademarks.  RL had also identified the class of consumers that it intended to market and had established channels of trade for the distribution of watches and jewelry bearing the RLX RALPH LAUREN and RALPH LAUREN RLX trademarks. *See Research In Motion Limited*, 92 U.S.P.Q. 2d. 1926 (citing the establishment of channels of trade and the identification of target consumers as factors to be considered in analyzed in determining an applicant's intent).  Products marketed under RL's RLX RALPH LAUREN and RALPH LAUREN RLX brands are sport performance products with a modern sensibility.  *See* Dalla Val Decl. Ex. N at 9.  Since 2004, RL has targeted its RLX RALPH LAUREN and RALPH LAUREN RLX products to athletes and those desiring to wear performance athletic apparel and accessories with a modern sensibility.  *See* Dalla Val Decl. Ex. N at 141-142.

████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████

NY 244707859v4

REDACTED

Based on the "entirety of the circumstances, as revealed by the evidence of record," there can be no question that RL had a bona fide intent to use the marks at issue on watches and jewelry at the time it filed the trademark applications.

### C.  Rolex's Reliance on the *Young* Decision is Misplaced

Rolex's reliance on RL's TTAB opposition proceeding against Rich Young is misplaced. *PRL USA Holdings, Inc. v. Young*, Opp. No. 91206799, 2013 TTAB LEXIS 551 at *9-10 (T.T.A.B. Oct. 16, 2013).  In that case, the trademark applicant was an individual who had no experience whatsoever in the wearing apparel business.  The Board found that the applicant lacked a bona fide intent, stating that the record "demonstrates that applicant has **no documentary evidence of business plans, marketing or promotional activities, nor any discussions with manufacturers or licensees** which could substantiate his claim of a bona fide intent to use applicant's mark in commerce as of the filing date of the application" and that applicant "failed to produce any evidence of any current business, **whether related to the goods listed in applicant's application or otherwise**." The Board specifically cited precedent in which it found a lack of bona fide intent "**by individuals who lack the demonstrated capacity to produce the goods identified in the application**."  *Swatch AG (Swatch SA)(Swatch Ltd.) v. M.Z. Berger & Co., Inc.*, 2013 TTAB LEXIS 515, 108 U.S.P.Q. 2d (BNA) 1463 (T.T.A.B. September 30, 2013).  The Board ultimately found that the applicant in *Young* had filed the application "merely to reserve a right in the mark" in case it was later approved for registration by the USPTO and that applicant would only at some unspecified future time begin developing a business.

The facts in *Young* could not be more different from the facts involved in this dispute. Unlike the applicant in the *Young* decision, as noted above, RL has produced multiple documents

10

REDACTED

evidencing its intent to use the marks at issue.[2] Most significantly, the applicant in *Young* was an individual without the experience or capacity to manufacture and produce apparel. Ralph Lauren Corporation is a Fortune 500 company founded by a world-renowned fashion designer who has been designing and producing a very broad range of apparel and accessories for decades.

### D. RL's Current Use and Plans to Use the Marks are Not Relevant to RL's Intent at the Time the Applications Were Filed

Rolex cites to the fact that RL has not yet used the RLX RALPH LAUREN and RALPH LAUREN RLX trademarks in connection with watches or jewelry as evidence in support of its claim that RL lacked a bona fide intent at the time it filed the applications in 2006. This argument defies logic. As the Court is aware, the analysis pertaining to the intent-to-use claim examines RL's intent at the time the applications were filed, not at the time of the Motion. Rolex filed its opposition to RL's trademark applications in 2006; RL's right to use the marks has been clouded since that time. ████████████████████████████████████████████

████████████████████████████████████████████████████████

Given the existence and duration of this dispute between the parties, it should come as no surprise ████████████████████████████████████████████████████

████████████████████████████████████████████████ However, Claim II of Rolex's Amended Complaint is that RL lacked a bona fide intent to use the trademarks **at the time the trademark applications were filed**. ████████████████████████████

████████████████████████

---

[2] Rolex quibbles with the precise presentation and appearance of the terms RLX and RALPH LAUREN on the 2006 web page printout, arguing essentially that the screenshot would not be a sufficient "use specimen" for trademark registration purposes. To this effect, Rolex cites *ex parte* TTAB cases concerning the suitability of trademark use specimens. **Unfortunately for Rolex, the hypothetical suitability of documents to serve as use specimens has no bearing whatsoever on the issue of bona fide intent to use a mark.** RL's sale of the RLX Suunto Watch beginning in 2004 evidences its intent to use the RLX RALPH LAUREN and RALPH LAUREN RLX marks at the time it filed its applications in 2006.

REDACTED

**E.  The Court Should Grant Summary Judgment to RL on Rolex's Claim that RL Lacked A Bona Fide Intent To Use The Marks In 2006**

In view of the undisputed facts of record, RL is entitled to summary judgment on Rolex's claim that RL lacked a bona fide intent to use the marks RLX RALPH LAUREN and RALPH LAUREN RLX.

**II.    THE COURT SHOULD DENY ROLEX'S MOTION TO DISMISS RL'S COUNTERCLAIM FOR DECLARATORY JUDGMENT OF NON-INFRINGEMENT**

The test for whether a court has subject matter jurisdiction over a claim, due to the existence of an actual controversy, is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007); *see also AARP v. 200 Kelsey Associates, LLC,* 2009 U.S. Dist. LEXIS 969, at *19 (S.D.N.Y. Jan 6, 2009).  Since *MedImmune*, "a lower threshold is required to find a case or controversy under the Declaratory Judgment Act." *Russian Standard Vodka (USA), Inc. v. Allied Domecq Spirits & Wine USA, Inc.*, 523 F. Supp. 2d 376, 382 (S.D.N.Y. 2007).   Additionally, when determining whether a declaratory judgment is appropriate, the "inquiry is necessarily one of degree and affords the district court great discretion in making a determination."  *Venugopal v. Sharadha Terry Products, Ltd.*, 2009 U.S. Dist. LEXIS 43534, at *5 (W.D.N.Y. May 18, 2009) (citing *Certain Underwriters at Lloyd's, London v. St. Joe Minerals Corp.*, 90 F.3d 671, 675 (2d Cir. 1996)).  "A court *must*, however, exercise that authority '(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, or (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" *Venugopal v. Sharadha Terry Products, Ltd.*, 2009 U.S. Dist. LEXIS

REDACTED

43534, at *6 (emphasis added) (quoting *Continental Cas. Co. v. Coastal Sav. Bank*, 977 F.2d 734, 737 (2d Cir. 1992)).

The Second Circuit has explained that since "[d]eclaratory judgment actions are particularly useful in resolving trademark disputes . . . , the finding of an actual controversy should be determined with some liberality." *Starter Corp. v. Converse, Inc.*, 84 F.3d 592, 596 (2d Cir. 1996) *abrogated on other grounds by MedImmune,* 549 U.S. 118. Furthermore, "a case or controversy exists in the trademark context 'where a party has engaged in a course of conduct evidencing a 'definite intent and apparent ability to commence use' of the [allegedly infringing] marks on [a] product.'" *Starter Corp*, 84 F.3d at 595-596.

### A. A Substantial Controversy of Sufficient Immediacy Exists Between RL and Rolex

There can be no doubt that a "substantial controversy" exists between RL and Rolex of "sufficient immediacy and reality to warrant the issuance of a declaratory judgment." RL and Rolex have been engaged in a dispute relating to RL's RLX RALPH LAUREN and RALPH LAUREN RLX marks for approximately eight years. Undisputed Facts at ¶¶ 7, 10-11, 14. Immediately following the TTAB's decision to dismiss Rolex's opposition, Rolex brought this action seeking to reverse the TTAB's finding that there was no likelihood of confusion between RL's RLX RALPH LAUREN and RALPH LAUREN RLX marks and the ROLEX marks. *Id.* Rolex has also repeatedly made clear that it will sue RL for infringement upon RL's selling of watches bearing the RLX RALPH LAUREN and RALPH LAUREN RLX marks on watches. *See* Rolex Brief at 5 ("While Rolex believes that use of RLX on a watch – with or without RALPH LAUREN – is likely to infringe and dilute Rolex's rights….").

The record shows that RL has demonstrated a "definite intent and apparent ability to commence use" of its RLX RALPH LAUREN and RALPH LAUREN RLX marks on watches and

13

REDACTED

jewelry, thus satisfying the "sufficient immediacy and reality to warrant the issuance of a declaratory judgment" standard established in *MedImmune*. *See Starter Corp.*, 84 F.3d at 596. RL's actions evidence its "definite intent and apparent ability to commence use" of the RLX RALPH LAUREN and RALPH LAUREN RLX marks on watches and jewelry:

- Between 2004 and 2007, RL offered and sold the RLX Suunto Watch bearing the RLX trademark, including on its RALPH LAUREN-branded e-commerce website;
- RL and Richemont formed the Joint Venture to design, develop, manufacture and sell watches and jewelry bearing RL's trademarks;
- ██████████████████████████████████████████████
  ██████████████████████████████████████████████
  ████████████████████████████;
- ██████████████████████████████████████████████
  ██████████████████████████████████████████████
  ██████████████████████████████████████████████;
- The Joint Venture currently sells approximately eighty watches bearing the RALPH LAUREN trademarks in the United States; and
- RL is a design-led company that has the capacity to quickly commercialize products once a product design has been finalized.

*See* Undisputed Facts at ¶¶ 32, 43, 46-53, 55; Dalla Val Decl. Exs. I-M.

Each of the above facts evidence RL's "definite intent" to commence use of the RLX RALPH LAUREN and RALPH LAUREN RLX marks for the goods at issue. Furthermore, Rolex cannot reasonably dispute that RL has an "apparent ability to commence use" of the marks, in light of the current operations of RL and the Joint Venture. *See id.* at ¶ 55. Based on the foregoing facts, RL has demonstrated a "definite intent and apparent ability to commence use" of its RLX RALPH LAUREN and RALPH LAUREN RLX marks on watches and jewelry sufficient to show a "substantial controversy" of "sufficient immediacy and reality to warrant the issuance of a declaratory judgment."

████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████

REDACTED

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████

### B. RL Is Not Required To Commence Use of the Marks Prior to Obtaining A Declaratory Judgment

Rolex essentially argues that to meet the declaratory judgment standard RL must provide prototypes of the watches it proposes to sell bearing the RLX RALPH LAUREN and RALPH LAUREN RLX marks; however, applicable law does not support this argument. Courts in the Second Circuit have exercised their authority under the Declaratory Judgment Act in cases involving significantly less commercial activity related to intent-to-use trademark applications than exists in this case.

In *AARP v. 200 Kelsey Associates,* LLC, this Court held that "[n]either the [Declaratory Judgment] Act nor Article III requires a plaintiff to expose himself to liability before bringing a declaratory judgment action" and that "it would be economically wasteful to require a plaintiff to embark on an actual program of manufacture, use or sale which may turn out to be illegal." 2009 U.S. Dist. LEXIS 969, at *16-*18, n.6.   "The true test is 'whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment,'" and "jurisdiction is not defeated by a party's decision to refrain from taking some action."   *AARP*, 2009 U.S. Dist. LEXIS 969, at *19 (citing *MedImmune*, 549 U.S. at 128, 137).  The plaintiff in *AARP* had filed an intent-to-use trademark application and was seeking licensees to publish the magazine, conducting analysis of the publishing industry, and generating written business plans concerning the design and sale of the magazine.  Ultimately, the Court in *AARP* found that the Defendants in that case had "overstate[d] the threshold for demonstrating the existence of a case or

REDACTED

controversy," by arguing that "nothing short of [plaintiff's] actually publishing, distributing, selling, or offering to sell [the allegedly infringing product] would create a case or controversy." *AARP*, 2009 U.S. Dist. LEXIS 969, at *7-*8.  The Court denied Defendants' motion to dismiss, found the existence of a sufficient case and controversy and noted that "[w]hile defendants may not have settled on a licensing partner, the Court must accept as true plaintiff's allegation that they have been actively searching for one." *AARP*, 2009 U.S. Dist. LEXIS 969, at *28.

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████Furthermore, the Joint Venture currently manufactures markets and sells approximately eighty different watches bearing the RALPH LAUREN trademark in the United States, further evidencing RL's apparent ability to commence use of the marks at issue. *See id.* at ¶ 55.

In *Venugopal v. Sharadha Terry Products, Ltd.*, the Court found it sufficient that "plaintiff ha[d] filed an intent to use application . . . and ha[d] stated that he 'wishes to commercialize products' using the trademark." 2009 U.S. Dist. LEXIS 43534, at *9 (W.D.N.Y. May 18, 2009). The Court found that Plaintiff "need not risk suit for infringement by engaging in the planned commercial activity before [it] can obtain a declaration of [its] rights." *Venugopal*, 2009 U.S. Dist. LEXIS 43534, at *10 (citing *Russian Standard* Vodka, 523 F. Supp. 2d at 383 (the threat of legal action for plaintiff's future conduct satisfies the "actual controversy" requirement of the Declaratory Judgment Act)). As described above, RL has engaged in significantly more

16

REDACTED

commercial activity than the plaintiff in *Venugopal*, including the formation of the Joint Venture,

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████

      Furthermore, Rolex's reliance on *Menashe v. V Secret Catalogue Inc.* is misplaced. 75 U.S.P.Q. 2d 1577 (S.D.N.Y. 2005).  In *Menashe*, the plaintiff had registered a domain name, conducted press interviews and photo shoots, retained a web designer, found a manufacturer, and "paid for the production and received 400 samples of their product, as well as 8 final articles that would serve as prototypes." 75 U.S.P.Q. 2d 1577 at*6.  First, RL notes that *Menashe* was decided pre- *MedImmune* and therefore still relied upon the "reasonable apprehension" test.  75 U.S.P.Q.2d 1577 at *4.  Second, in *Menashe*, this Court ultimately found that the plaintiff had a concrete intention to use their mark, and "had engaged in a course of conduct that put them in adversarial conflict" with the defendant. *Menashe*, 75 U.S.P.Q.2d 1577 at*4.  The Court in *Menashe* found that Second Circuit precedent may be read to allow an ITU applicant to preemptively file an action for declaratory judgment of noninfringement. *Menashe*, 75 U.S.P.Q.2d 1577 at *7 (citing *WarnerVision Entertainment Inc. v. Empire of Carolina, Inc.*, 101 F.3d 259 (2d Cir. 1996)).  The Court in *Menashe* also held that the plaintiffs have the right to request a ruling that they may use the mark "without incurring liability for infringement" so as to complete the registration process and that "policy considerations are important here, especially the promotion of certainty in business transactions . . . If I declined to hear this case for lack of subject matter jurisdiction, Plaintiffs would be faced with the hard choice of abandoning their application or attempting to complete the registration process and, in so doing, risk liability for infringement. This predicament would neither promote commercial certainty nor reward early filing." *Id.* at *18-19.  For the same

REDACTED

reasons cited in *Menashe*¸ it is in the interests of promoting commercial certainty and judicial

economy for the Court to hear RL's declaratory judgment counterclaim without requiring RL to

expose itself to an inevitable lawsuit for infringement from Rolex.

### C. Rolex Will Sue RL for Infringement Upon RL's Sale of Watches Bearing the Marks at Issue.

Rolex has repeatedly made clear that it will bring an infringement action against RL upon

its use of the RLX RALPH LAUREN and RALPH LAUREN RLX trademarks in connection with

watches. *See* Rolex Brief at 5. RL should not need to "risk suit for infringement by engaging in the

planned commercial activity before [it] can obtain a declaration of [its] rights." *See Venugopal*,

2009 U.S. Dist. LEXIS 43534, at *10.

In *In re Casino de Monaco Trademark Litigation*, the Court explained its decision to

provide a declaratory judgment as follows:

> the Parties in this case are sophisticated business entities and
> persons. It is reasonable for the Court to assume that either Party will
> zealously protect its rights. Since the Parties will continue to operate
> in the similar business sectors, it is possible another dispute could
> arise. It is helpful if this Court spell out what the Parties rights are to
> the marks at issue in this case. While a threat of suit is not necessary
> to declaratory judgment jurisdiction, an aggressive litigation strategy
> (such as what was demonstrated in this three year litigation) may
> signal the existence of an actual controversy.

2010 U.S. Dist. LEXIS 33950 at *27-*28 (S.D.N.Y. March 31, 2010)(citing *Micron Technology,*

*Inc. v. Mosaid Technologies, Inc.*, 518 F.3d 897, 899-901 (Fed. Cir. 2008)).  For the same reasons,

the Court should decide RL's declaratory judgment counterclaim.   Rolex is a "sophisticated

business entit(y)" that has demonstrated that it will employ an "aggressive litigation strategy" (as

evidenced by the eight year dispute currently before the Court) to "zealously protect its rights."

This case even goes one step further than *Monaco* because Rolex has made clear its intent to

18

**REDACTED**

commence an infringement action upon RL's sale of watches bearing the RLX RALPH LAUREN and RALPH LAUREN RLX trademarks.

Rolex essentially requests that the Court review the TTAB's likelihood of confusion analysis and upon the Court's affirmation that the there is no likelihood confusion between the marks, ████████████████████████████████████████ ████████████████ only to immediately be sued by Rolex again when RL offers its product for sale. This result does not promote judicial economy or commercial certainty and RL should not need to "risk suit for infringement by engaging in the planned commercial activity before [it] can obtain a declaration of [its] rights." *See Venugopal*, 2009 U.S. Dist. LEXIS 43534, at *10.

### D. The Court Should Deny Rolex's Motion to Dismiss RL's Counterclaim for Declaratory Judgment

Based on all of the above, "[t]here is no doubt that the circumstances of this case present a "substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment," as is required by *MedImmune*. *MedImmune*, 549 U.S. at 127. RL has demonstrated that it has a "definite intent and apparent ability to commence use" of its RLX RALPH LAUREN and RALPH LAUREN RLX marks on watches and jewelry.

Dated:  September 22, 2014

GREENBERG TRAURIG, LLP
Daniel I. Schloss (schlossd@gtlaw.com)
Daniel J. Navarro (navarrod@gtlaw.com)
Melissa B. Berger (bergerm@gtlaw.com)
200 Park Avenue, 34th Floor
New York, NY 10166
Telephone: (212) 801-9200
Facsimile: (212) 801-6400
*Attorneys for Defendant PRL USA Holdings, Inc.*