UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROLEX WATCH U.S.A., INC.,

                    Plaintiff,

          v.

PRL USA HOLDINGS, INC.,

                    Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/27/15

12 Civ. 6006

**OPINION**

This is a trademark case concerning whether defendant PRL USA Holdings, the company behind the brand Polo Ralph Lauren, may sell watches and jewelry bearing the trademarks RLX RALPH LAUREN or RALPH LAUREN RLX despite opposition from plaintiff, luxury watchmaker Rolex.

Against Rolex's opposition, PRL won a 2012 decision from the Trademark Trial and Appeal Board (TTAB) of the United States Patent and Trademark Office (USPTO) permitting it to register those two marks for use on watches and jewelry. Rolex now appeals, seeking to reverse the TTAB's decision. PRL opposes reversal and counterclaims for declaratory judgment affirming that it may use the marks RALPH

1

LAUREN RLX and RLX RALPH LAUREN on watches and jewelry without infringing Rolex's trademarks.

Three motions are now before the court.  First, Rolex moves to dismiss PRL's counterclaim for declaratory judgment.   Second, Rolex moves for summary judgment on Count II of the complaint, which alleges that PRL's trademarks are invalid because PRL had no bona fide intention to use the marks in commerce at when it applied for them. Third, PRL cross-moves for summary judgment on Count II of the complaint, contending that PRL's trademarks cannot be voided.

For the reasons discussed below, the court grants Rolex's motion to dismiss PRL's counterclaim.   The court denies both cross-motions for summary judgment on Count II of the complaint.

Background

## 1. Procedural History

Plaintiff Rolex is the exclusive importer and distributor of Rolex brand watches and jewelry in the United States.  Defendant PRL is a Delaware corporation and a wholly-owned subsidiary of Ralph Lauren Corporation.  PRL owns the trademark RALPH LAUREN and many related marks.

2

On December 7, 2004, PRL filed an application with the USPTO to register the mark RLX in International Class 14, the category of goods covering use on watches and jewelry.  On January 19, 2006, Rolex notified PRL of its intention to oppose PRL's registration of RLX in Class 14.  Four days later, on January 23, 2006, PRL filed two additional applications with the USPTO, seeking to register RLX RALPH LAUREN and RALPH LAUREN RLX, also in Class 14.  In these applications, PRL represented that it had a bona fide intention to use these marks in commerce for watches and jewelry.

On February 1, 2006, Rolex filed a formal Notice of Opposition to PRL's registration of RLX.  On May 12, 2006, Rolex filed a Notice of Opposition to PRL's registration of RLX RALPH LAUREN and RALPH LAUREN RLX.  The TTAB consolidated the oppositions on September 18, 2006.

On April 17, 2009, PRL abandoned its application to register RLX in Class 14.  On June 7, 2012, the TTAB dismissed Rolex's opposition to PRL's applications to register the marks RLX RALPH LAUREN and RALPH LAUREN RLX in Class 14.

On August 6, 2012, Rolex filed a complaint with this court, seeking review of the TTAB's dismissal.   Rolex amended its complaint on

3

January 15, 2014. PRL answered and counterclaimed on January 27, 2014.

On February 26, 2014, Rolex made the present motion for summary judgment on Count II of the amended complaint and for dismissal of PRL's counterclaim. On September 25, 2014, PRL cross-moved for summary judgment on Count II.

## 2. Facts

PRL designs and commercializes a broad array of branded consumer apparel and merchandise. It describes itself as a "design-led" company. This means that its design processes generally guide its business decisions, not the other way around. Thus, soon after PRL's leadership authorizes a finalized product design, PRL rapidly manufactures, distributes, markets, and otherwise commercializes the product. Dalla Val Decl. at ¶ 3.

Since 1998, PRL has sold a wide range of products bearing RLX and related trademarks. RLX stands for Ralph Lauren Extreme, and it denotes a line of Ralph Lauren products designed for active outdoor activities such as skiing and hiking. Amended Complaint at ¶¶ 20-21. These products have included coats, headwear, eyewear, and accessories, bearing various RLX-related trademarks such as RLX, RLX

4

POLO SPORT, and RLX RALPH LAUREN.  See PRL Exs. A-E. Many of these products displayed either RLX or RALPH LAUREN, without displaying those two elements (RLX and RALPH LAUREN) unified into a single trademark.  However, certain apparel products and accessories, including ski jackets and backpacks marketed in 2004 and 2005, clearly featured RLX RALPH LAUREN as a unitary trademark, with the RLX and RALPH LAUREN elements integrated into a single image.  PRL Exs. D, E.

███████████████████████████████

███████████████████████████ Between 2004 and 2007, PRL sold a digital watch called the "RLX Vector" or "RLX Suunto" watch. Morgan Tr. at 11.  A prominent logo near the watch's dial proclaimed "RLX" in capital letters, with the "RL" printed in black and the "X" printed in red.  Rolex Ex. F.  The watch also bore Suunto's mark.  Id. Notwithstanding the RLX mark, the watch bore no mark reading "Ralph Lauren."  Id.  However, the watch was sold on Ralph Lauren's website, where the words "Ralph Lauren" were displayed at the top of each page. PRL Ex. H.

███████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████   ███████████████   PRL and Richemont signed an agreement forming such a joint venture on January 26, 2007.  PRL Ex. I. The agreement was publicly announced on March 5, 2007.  Rolex Ex. I.

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████ ███ ███ █████ ████████ ████████ ███████

████████████████████████████████████████

██████████████

      ██████████████████████████████████

████████████████ ██████████████████████

████████████████████████████████████████

██████████████████ ████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████ ██████ █ ███████ ██████ █████ ██████ ████ █

████████████████ ████████████ ████████████

████████████████████████████████████████

████████████████████████



Currently, PRL's joint venture with Richemont produces and sells a line of luxury watches that bear the mark "RL." PRL Repl. at 9. None of these watches, however, bear the RLX, RLX RALPH LAUREN, or RALPH LAUREN RLX marks. Id.

Discussion

## 1. Motion to Dismiss PRL's Declaratory Judgment Counterclaim

In its answer to Rolex's amended complaint, PRL counterclaims for declaratory judgment that it may sell watches and jewelry bearing the RLX RALPH LAUREN and RALPH LAUREN RLX trademarks without infringing Rolex's trademark rights. Rolex's motion to dismiss that counterclaim is now before the court.

Rolex contends that PRL's counterclaim for declaratory judgment must be dismissed because it seeks an improper advisory opinion.
████████████████████████████████████████████████
███████ ███████ ████ ████ ██████ ███████ ██ ██████ ███████ ████
████████████████████████████████████████████████
██████ ███████ ██ ██████ ████ ██████ █████████ In the alternative, Rolex contends that even if the court has jurisdiction over PRL's counterclaim, the court should decline to exercise such jurisdiction because doing so would serve no useful purpose. PRL counters that there is a sufficient controversy and, moreover, that declaratory judgment would improve judicial economy by forestalling later litigation, when PRL produces watches bearing the disputed marks.

8

Thus, the court must decide whether the declaratory judgment sought by PRL would be a proper exercise of jurisdiction, and if so, whether exercising such jurisdiction would be useful. Here, declaratory judgment would be a proper exercise of jurisdiction, but the court declines to exercise it because doing so would not serve a useful purpose or definitively end the controversy between the parties.

### a. Jurisdiction Under the Declaratory Judgment Act

The Declaratory Judgment Act, 28 U.S.C. § 2201, supplies the basic standard governing whether PRL's counterclaim seeks a proper declaratory judgment or, on the contrary, an improper advisory opinion. The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration." Id. The Supreme Court has clarified that the phrase "case of actual controversy" refers to the same cases or controversies that are justiciable under Article III of the Constitution. MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007). To qualify as such a case or controversy, the dispute must be "definite and concrete, touching legal relations of parties having adverse legal interests"; it must be "real and substantial";

9

and it must "admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." Id. (quoting Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240-241 (1937)). In this Circuit, "the threat of future litigation remains relevant in determining whether an actual controversy exists." Nike, Inc. v. Already, LLC, 663 F.3d 89, 96 (2d Cir. 2011).

Where declaratory judgment jurisdiction exists, a district court has broad discretion overwhether to exercise it. Muller v. Olin Mathieson Chemical Corp., 404 F.2d 501, 505 (2d Cir. 1968). A district court is only required to entertain a declaratory judgment action where it will serve a useful purpose in clarifying the legal relations in issue, or where it will resolve the uncertainty that gave rise to the proceeding. Starter Corp. v. Converse, Inc., 84 F.3d 592, 597 (2d Cir. 1996). In a trademark case, the party seeking declaratory judgment must show that it has "a definite intent and apparent ability to commence the use of the [allegedly infringing] marks." Bruce Winston Gem Corp. v. Harry Winston, Inc., No. 09-CV-7352, 2010 WL 3629592 at *4 (S.D.N.Y. Sept. 16, 2010).

10

## b. Exercising the Court's Jurisdiction Over PRL's Counterclaim Would Not Serve a Useful Purpose

Here, PRL seeks declaratory judgment that it may commercialize watches and jewelry bearing the marks RLX RALPH LAUREN or RALPH LAUREN RLX without infringing Rolex's marks.  The court finds that such declaratory judgment would fall within this court's jurisdiction, but it would be "too abstract to serve a useful purpose" and "unlikely to end controversy between the parties."  Bruce Winston, 2010 WL 3629592 at *4.

The requested declaratory judgment aims to resolve a dispute between the parties as to whether PRL's use of RLX RALPH LAUREN or RALPH LAUREN RLX on watches or jewelry would infringe Rolex's trademark rights.  Multiple facts in the record demonstrate that this question meets the MedImmune standard for justiciability.  First, Rolex acknowledges it will bring an infringement action if PRL produces watches and jewelry bearing those marks. Rolex Repl. at 11.  Second, PRL has already offered and sold, between 2004 and 2007, a watch bearing the RLX mark, demonstrating the reality of the controversy, as well as PRL's ability and willingness to launch the products in question. Morgan Tr. at 11.  Third, PRL has entered into a joint venture with watchmaker Richemont.  PRL Ex. I.

11



Both sides have vigorously pursued this litigation at considerable expense. All this tends to show that the parties here have a real, substantial dispute concerning the trademarks in question, satisfying the <u>MedImmune</u> standard and establishing the court's declaratory judgment jurisdiction.

But even where the justiciability requirement has been met, the court has discretion whether to exercise its declaratory judgment jurisdiction. <u>See</u> <u>AARP v. 200 Kelsey Assocs., LLC</u>, 06-CV-81, 2009 WL 47499, at *4 (S.D.N.Y. Jan. 8, 2009). Here, the court finds good cause to decline to exercise its jurisdiction.

Under such circumstances, Rolex "rightly objects to the use of a declaratory judgment action to construct the future framework of the interaction between the parties in the absence of a

12

specific dispute about an imminent activity." <u>Bruce Winston</u>, 2010 WL 3629592 at *6. Any declaratory judgment would risk making false assumptions about PRL's eventual course of action in commercializing the disputed products, and thus provide no resolution to the dispute. Furthermore, Rolex has raised legitimate concerns about whether the parties can litigate questions of infringement or dilution (in connection with the declaratory judgment claim) without evidence flowing from the products' existence in the markets.

Taken together, these concerns cause the court to decline to exercise its declaratory judgment jurisdiction. Rolex's motion to dismiss PRL's counterclaim is accordingly granted.

## 2. Summary Judgment on Count II of the Complaint

Also before the court are cross-motions for summary judgment. Rolex claims it is entitled to summary judgment on Count II of the complaint, which alleges that PRL's registrations of RLX RALPH LAUREN and RALPH LAUREN RLX are void because PRL lacked bona fide intent to use those marks when it applied for them in January 2006. PRL also seeks summary judgment on Count II, contending that PRL did have bona fide intent to use the marks.

13

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). An issue as to a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1987). In demonstrating the existence of a genuine issue of material fact, the nonmoving party may not rest upon mere allegations or conclusory statements, but must go beyond the pleadings with proper documentary evidence. See Davis v. New York, 326 F.3d 93, 100 (2d. Cir. 2002).

On receipt of cross-motions for summary judgment, the court must evaluate each motion on its merits. See Heublein, Inc. v. United States, 996 F.2d 1455, 1461 (2d Cir. 1993). After reviewing the record, the court denies both motions.

## a. The Disputed Trademarks are Void Unless PRL Intended to Use Them in Commerce at the Time of Application

In January 2006, PRL applied to register the trademarks RLX RALPH LAUREN and RALPH LAUREN RLX for use on watches and jewelry. The USPTO granted the applications, and the TTAB later upheld them over Rolex's opposition.

14

Nonetheless, pursuant to Lanham Act § 1(b), 15 U.S.C. § 1501(b), these applications are void unless, at the time of filing the application, PRL had a "bona fide intention to use the mark[s] in commerce" on the goods at issue (here, watches and jewelry).  Id.  A bona fide intention in this context means "an actual, subjective state of mind" under "circumstances showing . . . good faith."  See Aktieselskabet AF 21 November 2001 v. Fame Jeans Inc., 525 F.3d 8, 21 (D.C. Cir. 2008). Moreover, "an opposer may defeat a trademark application for lack of bona fide intent by proving the applicant did not actually intend to use the mark in commerce or by proving the circumstances at the time of filing did not demonstrate that intent."  Id.

Whether such intent existed at the time of application is an objective determination based upon all the circumstances.  Lane Ltd. v. Jackson International Trading Co., 33 U.S.P.Q. 2d 1351, 1356 (T.T.A.B. 1994).  The TTAB has also held that "the absence of any documentary evidence on the part of an applicant regarding such intent is sufficient to prove that the applicant lacks" the required intent to use the trademark in commerce.  Commodore Electronics Ltd. v. CBM Kabushiki Kaisha, 26 U.S.P.Q. 2d 1503, 1993 WL 156479 at *4 (T.T.A.B. Feb. 3, 1993).

No court in this Circuit has addressed a motion for summary judgment concerning a trademark applicant's bona fide intent to use a trademark.  However, cases from other Circuits and from the TTAB offer guidance.  Numerous courts have emphasized that the factual question of an applicant's intent is usually ill-suited to summary judgment.  See Copelands' Enterprises, Inc. v. CNV, Inc., 945 F.2d 1563, 1567 (Fed. Cir. 1991); Honda Motor Co. v. Winkelmann, 90 U.S.P.Q. 2d 1660, 2009 WL 962810 at *2 (T.T.A.B. Apr. 8, 2009).  This is understandable because issues of intent are, in general, difficult to prove.  But the TTAB and at least one district court have concluded that summary judgment for a trademark opposer is appropriate where an applicant has failed to produce documentary evidence of bona fide intent, and lacks an explanation for that failure.  See City of Carlsbad v. Shah, 666 F. Supp. 2d 1159, 1165 (S.D. Cal. 2009) (citing Honda Motor Co., 2009 WL 962810 at *4).  Here Rolex proceeds on that theory, contending that PRL lacks any documentary evidence of its bona fide intent.

Accordingly, the court should grant Rolex's motion for summary judgment if (1) Rolex shows an absence of objective documentary evidence of PRL's intent to use the marks in commerce at the time of application, and (2) PRL provides no valid explanation as to why it has

16

produced no such evidence.  See Honda Motor Co., 2009 WL 962810 at

*2.  This is a high hurdle.  Indeed, to avoid summary judgment, PRL

need not produce a "smoking gun" document that extinguishes all doubt

as to its intent to use the trademarks in commerce.  And where there is

not an absence of objective documentary evidence, all the circumstances

are relevant to the determination of PRL's intent.  See The Wet Seal, Inc.,

v. FD Management, Inc., 82 U.S.P.Q. 2d 1629, 2007 WL 458529 at *14

(T.T.A.B. 2007).[1]

PRL's motion for summary judgment also faces a high hurdle.

There would be little precedent for granting summary judgment in favor

of an applicant on the issue of bona fide intent.  And the court is mindful

that "as a general rule, the factual question of intent is particularly

unsuited to disposition on summary judgment."  Copelands' Enterprises,

945 F.2d at 1567.  Nonetheless, PRL's motion should be granted if the

uncontested facts and circumstances establish that PRL had a bona fide

intent to use the marks when it applied for them.  See Research in

Motion Ltd. v. NBOR Corp., 92 U.S.P.Q. 2d 1926 (T.T.A.B. 2009).

---

[1] Wet Seal affirms the significance of an applicant's conduct in business and capacity to
commercialize the disputed trademarks: "Merely because applicant may not have taken
steps to actually launch or introduce a particular product does not mean that applicant
otherwise had no intention to develop or market the product . . . . [A]pplicant had the
capacity to market and/or manufacture shampoos and color products, having produced
them in the past under different marks, which would tend to affirmatively rebut any claim
by opposer regarding applicant's intent."

### b. Neither Party is Entitled to Summary Judgment on Count II

The parties have completed discovery and PRL has had ample opportunity to present documentation of its intentions concerning the disputed marks at the time of registration. Voluminous exhibits, such as PRL's catalogs and product designs, have been introduced into evidence. However, the parties disagree as to what this evidence reveals about PRL's intent.

### i. Rolex's Motion for Summary Judgment

To begin with, Rolex rightly emphasizes that the question in this case is whether PRL had bona fide intent to use the marks at issue on the goods at issue. The marks at issue are RLX RALPH LAUREN and RALPH LAUREN RLX, and the goods at issue are watches and jewelry. Rolex contends that many of the documents PRL has produced—such as catalogs from 2004 and 2005 showing that PRL commercialized various jackets and skiwear bearing the trademark RLX RALPH LAUREN—do not demonstrate that PRL intended to use that mark on the goods at issue. Similarly, Rolex contends that PRL's sale of the RLX Suunto watch, between 2004 and 2007, does not demonstrate PRL's intent to use the marks at issue on watches, because that watch bears the mark RLX unaccompanied by the words "Ralph Lauren."

Rolex is mistaken. The RLX RALPH LAUREN catalogs and the RLX Suunto watch constitute documentary evidence that PRL intended, at the time of its trademark applications, to use the marks at issue on the goods at issue. The catalogs and the watch prove numerous facts that support PRL's intent. For example, the catalogs show that RLX RALPH LAUREN and RALPH LAUREN RLX were not ad-hoc trademarks invented to claim intellectual property, but rather existing trademarks that PRL was already commercializing, at the time of the application, on products such as ski apparel and accessories. Additionally, the catalogs show that PRL had commercialized similar trademarks on a wide range of products, from sunglasses to socks. The brand concept behind this family of trademarks could have easily and organically embraced watches and jewelry. These catalogs further show that RLX was a versatile mark that PRL frequently combined with other words to form unitary trademarks such as RLX POLO SPORT and RLX RALPH LAUREN.

The commercialization of the RLX Suunto watch between 2004 and 2007 also demonstrates that PRL intended to produce watches as part of the RLX family of merchandise. This is not conclusive proof that PLR intended to use RLX RALPH LAUREN or RALPH LAUREN RLX on watches or jewelry. But it does show that the manufacture of watches or

19

jewelry bearing those marks lay within PRL's immediate capability, and that such goods would have fit coherently into PRL's line of RLX products.

PRL's joint venture with watchmaker Richemont adds to the evidence that PRL intended to commercialize watches bearing the disputed marks at the time of the application.  The joint venture was consummated in January 2007, and had been the subject of plans and negotiations for some time before that date.  It is therefore a significant indicator that PRL intended to commercialize watches bearing a range of PRL's trademarks, likely including the disputed marks, at the time of application in 2006.



Thus, Rolex has failed to show an absence of documentary evidence of PRL's bona fide intent to use. PRL may lack irrefutable proof of its intent. But this does not amount to a failure to produce "objective documentary evidence of PRL's intent to use the marks in commerce at the relevant time." See Honda Motor Co., 2009 WL 962810 at *2. PRL has, moreover, produced meaningful documentary evidence of its bona fide intent to use the trademarks, see Aktieselskabet, 525 F.3d at 21, and Rolex fails to show on all the circumstances that PRL lacked the requisite intent. See The Saul Zaentz Company dba Tolkein Enterprises v. Joseph M. Bumb, 2010 WL 2191890 at *4 (T.T.A.B. May 18, 2010). A genuine issue of material fact clearly exists as to whether PRL applied for the disputed trademarks without intending to commercialize them on watches and jewelry, and summary judgment must be denied to Rolex.

## ii. PRL's Motion for Summary Judgment

Although Rolex is not entitled to summary judgment in its favor, neither is PRL. The central issue of fact—whether or not PRL had bona fide intent to use the marks at the time of application—remains a matter of genuine dispute. PRL's evidence of its intent is mostly circumstantial, and well short of conclusive. It is noteworthy, for example, that PRL has not been able to produce stronger evidence of its intentions to

21

commercialize the new marks, in the form of an email, a business plan, or a product design contemporaneous to the application. For these reasons and others, a reasonable finder of fact could conclude that the registrations were made without bona fide intent to use. Summary judgment is denied to PRL.

## Conclusion

For the reasons stated above, both motions for summary judgment are denied. Rolex's motion to dismiss PRL's counterclaim for declaratory judgment is granted. This resolves the motions listed as items 25 and 45 on the docket.

This is a public redacted version of the opinion filed under seal March 31, 2015.

SO ORDERED.

Dated: New York, New York
     April 27, 2015

Thomas P. Griesa
United States District Judge